GEORGE W. BAKER and JUNE E. BAKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baker v. Commissioner
Docket No. 1684-72
United States Tax Court
T.C. Memo 1973-206; 1973 Tax Ct. Memo LEXIS 82; 32 T.C.M. (CCH) 962; T.C.M. (RIA) 73206; September 17, 1973, Filed *82 Petitioners, professional teachers, took a six-month trip around the world. They claimed a deduction for the cost of their trip as an educational business expense, citing Income Tax Regs. section 1.162-5. Held: While traveling is broadening, enriching culturally, and may add to one's sensitivity to, and understanding of, others, there is no showing that the indisputable benefits of the trip bore a sufficiently direct relationship to the teaching activities of petitioners to convert what is normally a personal expense incurred on a holiday into a business expense. George W. Baker and June E. Baker, pro se. Joseph M. Wetzel, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined *83 a deficiency in petitioners' income tax for the year 1967 in the amount of $1,229.38. The deficiency is attributable solely to 2 the disallowance by respondent of a deduction of $7,252.06 claimed by petitioners as "Unreimbursed Travel Expenses For Educational Purpose." FINDINGS OF FACT Petitioners are husband and wife and at the time of filing their petition herein resided in Grants Pass, Oregon. They filed their joint Federal income tax return for the calendar year 1967 with the district director of internal revenue, Ogden, Utah. They reported their income and claimed their deductions on the cash basis of accounting. Petitioners have been teaching in the public school system since 1961. During the 1964-65 school year June E. Baker (hereinafter referred to as June) was employed by the Grants Pass, Oregon, School District as a teacher in the second grade. Grants Pass is a town of some 10,000 people located in the mountainous region of southern Oregon. During that same school year (1964-65) George W. Baker (hereinafter referred to as George) was employed by the Grants Pass School District as a boys' counselor and teacher of mathematics and social studies. At the end *84 of the 1964-65 school year George and June terminated their employment relationship with the Grants Pass School District. For the next two school years (1965-66 and 1966-67) both George and June were employed as teachers 3 by the United States Department of the Interior in the Trust Territory of the Pacific Islands on the Island of Rota. Although they presented their plans for teaching in Rota and taking the world tour to the school superintendent in Grants Pass, no official leave of absence was granted. They were not guaranteed reemployment upon their return, but did have "an unofficial offer." Petitioners left Rota in June 1967 and journeyed to Guam, where they stayed 2 days. They then traveled in Japan for 42 days, before going on to Okinawa, Taiwan, the Philippine Islands, Sabah (part of the Malaysian Federation), and Singapore. They then visited Thailand (5 days), India (30 days), and Israel (23 days). They then visited Kenya and Tanzania in Africa (9 days) before touring Europe, visiting Italy, Switzerland, Italy (again), Spain and Portugal. They left Portugal on December 18, 1967, flying home to Oregon via New York City and San Francisco. During the trip petitioners *85 were guided generally by their desire to see things in which they were interested. Among other things their specific activities included the following: (a) Hiking; (b) Attending the International Ice Follies; (c) Singing and eating with young people at the seashore; (d) Visiting parks, shrines, museums, libraries and historical sites; 4 (e) Singing and relaxing with Japanese students at a beer garden; (f) Attending a theater performance; (g) Wandering the streets of Tokyo and touring other cities; (h) Viewing volcanoes and mountains; (i) Taking a two-week circuit boat trip (starting and ending at the same point) through the southern islands of the Philippines; (j) Visiting the Ernie Pyle memorial island; (k) Living on a houseboat in Kashmir with two houseboys; and (l) Taking a safari in Africa. Petitioners visited schools in Japan, Sabah, India, Thailand and Italy. They also visited with American Peace Corps personnel in India and Sabah. Upon returning to the United States in December 1967 or January 1968, June resumed teaching grade school in Grants Pass. George was going to be a Job Corps counselor at a camp in Grants Pass, but the camp closed. *86 So, from January to June 1968, George began his work on a masters program, which, for that period, included counseling at a family service clinic. Sometime between January 1, 1968 and March 29, 1968, George and June entered into new employment contracts with the Grants Pass School District. Performance under these new contracts began in September 1968. From that date on and continuing for all other times relevant hereto, June was engaged as a third grade teacher in Grants Pass, Oregon. From September 1968 and continuing for all other times 5 relevant hereto, George was engaged as a counselor at South Junior High School in Grants Pass, Oregon. The courses taught by George, such as linguistic arts and English, were directed to students who were nonreaders, failures or dropouts. In June 1969 George completed his requirements for a master of science degree in general studies with a major in psychology and received his M.S. at that time. In June 1971 George received his certification in counseling from the Oregon Department of Education. Neither George nor June speaks or reads any language other than English. There has never been nor is there now a rule of the Oregon *87 Department of Education or of the Grants Pass School District requiring foreign travel of either counselors or teachers. The petitioners filed no reports with any superiors on any aspect of their trip. The basic duty of a junior high school counselor is to be aware of the needs and problems of the school's students and the immediate community, and to attempt to guide the students, academically and otherwise, in ways that will solve their problems and meet their needs, particularly academic needs as they relate to post-school job qualification. In carrying out his counseling duties George has played a substantial role in revision of the academic program at South Junior High School. Other than his involvement in curriculum planning, George's time at school is spent fully in individual and group counseling. 6 George sometimes shows slides (taken while living on Rota and while on the world trip) to various classes, but he is not required to do so as part of his employment, and he receives no compensation with respect to this activity. Prior to the Rota teaching assignment and world tour, June taught first, second and fourth grades. Since returning from the trip June has *88 taught third grade exclusively. The subjects June teaches and the time devoted to the subject per school day or week are as follows: (a) Reading
1 hour/day
(b) Spelling and Writing
1/2 hour/day
(c) English
1/2 hour/day
(d) Arithmetic
3/4 hour/day
(e) Social Studies
3/4 hour/day (alternate days)
(f) Science
3/4 hour/day (alternate days)
(g) Art
Once a week
After lunch each day, one-half hour is also devoted, randomly, to current news, stories or general communication. June's third grade students also have music and physical education, but these subjects are taught by other teachers. June teaches social studies for three-quarters of an hour on alternate days. In teaching social studies June has used slides taken on the world tour when she is covering the topics "Food and its Production and Transportation," and "Clothing, Leather and Rubber." Slides and tapes depicting the transport of pigs and the process of canning pineapple have been used in the foods topic. Slides of rubber production have been used in the "Clothing, Leather and Rubber" topic. 7 In teaching the values of American society and the relative comfort of American life, June *89 has illustrated her talks by relating observations made during the trip. With respect to this world travel the petitioners deducted on their joint Federal income tax return for 1967 the amount of $7,252.06, computed as follows: Airplane fares
$2,708.06
Less reimbursement, Trust Territory
(836.00)
$1,872.06
Per diem expenses 180 days at $30
5,400.00
Less reimbursement, Trust Territory
(20.00)
5,380.00
$7,252.06
The per diem expenses were computed solely on the basis of an estimate of $15 per day per person. This overall estimate included food, lodging and in-country transportation. George kept a diary, but used it only as a reference for dates and places visited. OPINION Section 162(a) of the Code provides: (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * * (2) traveling expenses * * * while away from home in the pursuit of a trade or business; * * *. 8 Hence, it is obvious that the expenditures for travel incurred by petitioners are deductible if they were incurred "in the pursuit of *90 a trade or business." Clearly the trade or business of petitioners was that of being school teachers. Were the expenses at issue in furtherance of such occupation then? To analyze further the question we must turn to respondent's regulations. Section 1.162-5, Income Tax Regs., governs the deductibility of a taxpayer's educational expenditures, and is cited by petitioners in support of their claim. By T.D. 2691, 1958-1 C.B. 63, respondent promulgated a version of section 1.162-5 which made traveling expenses deductible if they were incurred "primarily to obtain education the expenses of which are deductible." In 1967 respondent revised his regulations effective for taxable years beginning on or after January 1, 1968, to eliminate the primary purpose test. T.D. 6918, 1967-1 C.B. 36, Rev. Rul. 68-191, 1968-1 C.B. 67. For years prior to 1968 Rev. Rul. 68-191 authorized taxpayers to rely on either version of the regulation. In Stanley Marlin, 54 T.C. 560 565 (1970), we characterized the change as follows: Section 1.162-5(d), Income Tax Regs. (1967), removes the subjective requirement of primary purpose, which was often difficult *91 to establish, and, consequently, is more favorable to taxpayers claiming deductions for educational travel expenses than the old regulations. Accordingly, in fairness to petitioners, 9 we apply the new regulations in this case. [3]
The identical situation prevails here and hence we will apply the tests of the amended regulations. Section 1.162-5 of the amended regulations reads as follows: (d) Travel as a form of education. Subject to the provisions of paragraph (b) and (e) of this section, expenditures for travel (including travel while on sabbatical leave) as a form of education are deductible only to the extent such expenditures are attributable to a period of travel that is directly related to the duties of the individual in his employment or other trade or business. For this purpose, a period of travel shall be considered directly related to the duties of an individual in his employment or other trade or business only if the major portion of the activities during such period is of a nature which directly maintains or improves *92 skills required by the individual in such employment or other trade or business. [emphasis added] Whether the period of travel of petitioners was directly related to their duties as teachers is, of course, a question of fact. We accept as a major premise that traveling is broadening. It no doubt aids the average traveler in becoming more tolerant or understanding of the habits and customs of others. It enriches culturally. It increases one's ability to communicate with others, an important facility to one whose occupation requires daily communication with children. In short the fact of benefit to the wayfarer cannot be gainsaid. 10 But the problem is to determine at what point the benefit bears a sufficiently direct relationship to the traveler's occupation to convert what is normally a personal expense incurred on a holiday into a business expense. Did the petitioners gain an extra measure of tolerance, understanding, cultural enrichment or facility in communicating through travel that perceptibly improved their skills as needed in their work? We cannot find the requisite direct relationship. George has failed completely to relate directly the benefits of his *93 travel to an improved skill as a counselor. His experience with young people around the world must have been enjoyable experience, but cannot be deemed any more directly related to his skills as a counselor than spending an equal amount of time with youngsters in Oregon or elsewhere in the United States. His use of slides from his travels were, by his own admission, de minimis. A review of the courses taught by June requires the same conclusion with respect to her travels. Her journey, and the experiences thereon, must be deemed to bear only a most general relationship to those specific courses. Her use, too, of the slides must be deemed de minimis. Neither petitioner can find any comfort from the argument that his general skills as a teacher were improved. Such 11 an argument is premised on the antithesis of the required direct relationship. For all they, or we, know the benefit of their trip may never have a proximate bearing on the skills used by them in their daily duties. Decision will be entered for the respondent. Footnotes
3. If petitioners fail to satisfy the test for deductibility under the new regulations, a fortiori, they fail under the old regulations. ↩